Caruthebs, J.,
delivered the opinion of the court.
The defendants erected extensive mills &c., at Port Royal, in Montgomery county, and failed. Several bills were filed by the complainants, and attachments issued *134 to assert their lien as mechanics against the property. The Bank of Tennessee is also a party insisting upon its priority of right, as vendor by bond for title, for the unpaid purchase money, of about four thousand dollars. This right is conceded, and the contest is between the other parties. The various cases were consolidated. The sale of the property was made, and after discharging the debt of the bank, there still remains of the proceeds for distribution among the complainants, about three thousand dollars. The debts of complainants, which ai*e declared by the decree below to be a lien upon the property, and to be paid pro rata, amount to five thousand three hundred and forty-three dollars. This sum is made up as follows: Greenwood’s debt four thousand one hundred and three dollars; Wilder three hundred and sixty-five dollars; Durrell four hundred and seventy-five dollars; Stewart one hundred and nine dollars; Izor two hundred and ninety dollars. In addition to these complainants, McOauly & Johnson’s decree amounts to six hundred and eighty-three dollars. As this claim was not for work done or materials furnished for the buildings, it was excluded until the others were satisfied. All the parties appeal on both sides, except Greenwood and the Bank of Tennessee.
The only question now made is, as to the correctness of allowing Greenwood to participate in this fund equally with the mechanics. It is contended that non-residents who furnish materials out of the State, are not embraced in our act of Assembly, but that it was only intended for our own mechanics, and for materials made in the State. We cannot concur in this construction. It would be against that comity and liberality that does, and should ever exist between us and our sister States. The provis *135 ions of tbe act is general, and we will not by construction, make tbe inivdious distinction. We must then regard this claim witb tbe same favor as if it belonged to one of our own citizens, and test tbe right of Greenwood by tbe same rules that we would do if be were a resident of Clarksville or Nashville, and bad made tbe same contract.
Tbe act of 1846, ch. 118, § 1, gives a lien to any mechanic or undertaker who may “furnish materials, or any part of tbe materials, in tbe construction, building or repairing of any bouse, fixtures or improvements, or shall do any work upon tbe said bouse, either by finishing off tbe same, painting, ornamenting or otherwise. Such meoha/mo or imckrtalcer shall have a lien,” &c. Mr. Greenwood was an iron merchant, and contracted witb tbe agent of defendant to furnish tbe iron and castings necessary for tbe factory, to be paid in part upon delivery in Cincinnati, and tbe balance in a bill on time. We do not believe that it was tbe intention of tbe Legislature to provide a lien, and thus give a preference over other creditors to him who sells to a company or an individual, machinery to put into a bouse built for manufacturing, any more than to a cabinet maker for tbe furniture to go into a new building, or to a merchant who may have sold nails, screws and locks, to an undertaker, or to tbe owner. But to whom is this lien given? To tbe mechanic or undertaker, by express words, both for work done by himself, or others under him, and for tbe materials such mechanic who contracts to erect tbe building, or any other person who may undertake it, shall furnish. This section does not apply to tbe person from whom tbe undertaker may get tbe materials; it does not give him any lien. He gives *136 credit to the undertaker, and must look to him for his pay. If this were not so, there would be no use for the second section, which expressly extends the lien to others than those provided for in the first section.
“ Seo. 2. That the provisions of this act, and the benefit of the lien hereby created, shall be extended to the journeymen workmen of said mechanic or undertaker, or such other persons as may be employed by or under him, to do any part of said work, or furnish any of the said materials, who shall be authorized to enforce the same in preference to said undertaker; Provided, notice in writing of said lien, shall be first given to the owner,” &c.
By the first section, the lien was given to the “ mechanic or undertaker,” who might, “by special contract with the owner,” construct, build or repair, or furnish the whole or any part of the materials for any house, &c. But as the undertaker might not be responsible, the second section extended the lien to any person that might be employed by or under him, to do any part of the work, or furnish any of said materials. Then if materials are furnished by contract with the undertaker, the lien is given to such person, in preference to said undertaker. But this lien depends upon giving notice to the owner. The object of which is, that he may may withhold from the undertaker, with whom he has contracted, the amount of such claim. The second proviso demonstrates the correctness of this construction. And provided further, “That the claims herein secured by lien, for work and labor done, or material furnished, shall in no case exceed the amount agreed to be paid by the owner or proprietor, in his original contract with the undertaker.” If this were not so, and it was intended to give *137 a lien to all who might furnish materials or machinery for a building, why would it be limited to the amount agreed to be paid to the mechanic, or other person who undertakes the building? What would be the necessity for any reference to that contract? The whole object of the act might be defeated by the opposite construction. A mechanic agrees to build a house for a factory, for a certain amount, and lays out large sums for materials and workmen, and looks to the lien given him by law for his security; but, at the same time, the owner, by whom he is employed, makes a contract for fifty thousand dollars worth of machinery, and breaks; when the machinist comes forward with his large claim, and overwhelms him. This could not have been the intention of the' legislature. It thought “the laborer was worthy of his hire,” and intended to secure it to him. Mr. Greenwood’s contract was with the owners, and had no connection with the undertakers. His case is not provided for in this act; but the claims of the other complainants are, as they worked as mechanics on the building. It is true he has acquired a lien under the ' act of 1832, by the registration of his judgment at law and filing his bill, but that is subordinate to the lien of these mechanics given by the act of 1846. They must therefore be first paid, and the balance of the fund, after the payment of all costs, will go to him.
Upon the two grounds, then, stated in this opinion, we consider the decree of the chancellor erroneous, and it must be modified as above stated, and the cause remanded.